ELLISON & HARVEY v. A. N. SEXTON and J. A. SEXTON, partners trading as A. N. SEXTON & CO.

*Partnership—Notice of Dissolution.*

1. A partner retiring from the partnership, in order to relieve himself from further liabilities must bring actual notice of such retirement and of such dissolution of the partnership home to such persons as have been accustomed to deal with it.

2. As to persons having knowledge of the firm before its dissolution, but not having dealt with it, general public notice of the dissolution, given in any reasonable way, will be sufficient.

3. A single publication of a notice of dissolution, in a paper published in the place where the firm did business, and having a large local circulation, is not sufficient.

CIVIL ACTION, tried before *Graves, J.,* at February Term, 1890, of the Superior Court of WAKE County.

On the trial, it was "admitted that the defendants A. N. Sexton and J. A. Sexton were partners, doing a general grocery business in Raleigh," under the name and style of A. N. Sexton & Co.; that they did business during the year 1883 and part of the year 1884; the partnership was dissolved about May of the latter year. The business was continued by the defendant A. N. Sexton under the firm name, until his failure, a year or two afterwards. The evidence tended to prove that the firm was well known in the city of Raleigh, and elsewhere; that it had been reported through "Bradstreets' Mercantile Agency"; that business people, many of them, saw such report and consulted such Agency; that it reported J. A. Sexton as the solvent member of the firm, &c. The evidence further went to show that the firm gave notice to persons and firms with whom it had dealt of its dissolution. The plaintiffs had not dealt with it before that time. Afterward, in the months of August, October and December, of the year 1884, the plaintiffs, merchants of Richmond, Va., sold to "A. N. Sexton & Co.", whiskey of the value of $489.34, and this action is brought to recover the sum due for the same, and particularly to charge the defendant J. A. Sexton therewith, as a member of the firm named, upon the ground that he allowed his co-defendant to use the firm name after the formal dissolution of the partnership, and that no notice of such dissolution was given to the business public. There was evidence on the trial tending to p ove that the plaintiffs, through their business agent, had express notice of such dissolution of the partnership, and that the defendant J. A. Sexton had gone out of the business, and was not of the firm, or in any way connected with the business as continued. There was also evidence to the contrary. There

was no evidence on the trial of general notice of the dissolution of the partnership, except the following:

"I am proprietor of the *Evening Visitor;* it has a large local circulation; not large out of the State; I published the notice of dissolution at the request of one of the Sextons; I think it was the Doctor; he told me to publish one time; I told him it should be published thirty days; there was only one insertion of the notice; he did not direct publication any more than one time."

On the subject of notice, the Court instructed the jury as follows:

"If one party sells out his interest in the co-partnership, and withdraws therefrom, this is a dissolution, and the actual co-partnership is at an end.

"But as to all other persons, a constructive partnership continues until proper notice of such dissolution is given.

"General notice is sufficient as to the public in general, but as to such as have had dealings 'actual notice must be given.

"The plaintiffs never had any dealings with the defendants prior to the alleged dissolution.

"And so the law did not require any of the defendants to give to the plaintiffs any actual notice.

"Notice of dissolution may be made, so far as the general public is concerned, by publication in a newspaper published in the town where the firm does business for a sufficient time to give notice to those with whom the partners dealt.

"Of course such notice must be given in a public manner, in a newspaper of general circulation.

"The law would not allow a mere pretence to the mode of publication.

"It must be a fair, open notice, so that it may be read of all concerned.

"The law requires good faith in all dealings; and will not allow any person, by any false light, to mislead another in matters of contract, and escape responsibility.

" If a man knows that he is held out as a partner, and if he allows his name to be used on a public sign over a place of business, and persons induced by such appearance extend credit, he who allows himself to be thus held out to the public would be estopped to deny that he was a partner, and would be held to be a partner by construction of law."

The plaintiffs requested the Court to instruct the jury that the notice given in the newspaper mentioned was not notice; certainly, not sufficient notice. The Court did not do so, otherwise than as above stated. The plaintiffs excepted, and appealed.

*Mr. W. J. Peele*, for the plaintiffs.
*Mr. E. R. Stamps*, for the defendants.

MERRIMON, C. J.— after stating the facts: Evidence was produced on the trial to prove that the plaintiffs had knowledge of the business partnership of A. N. Sexton & Co., and that the defendant J. A. Sexton was the solvent member thereof before its dissolution in May, 1884. In the absence of knowledge or notice of such dissolution and the retirement of J. A. Sexton from the firm and its business, and as the other partner continued the business under the firm name, the plaintiffs might reasonably, and they had the right to, infer that the firm continued to exist, and that the retiring member of it was still a member thereof, and responsible for such debts and liabilities as the member continuing the business might contract or incur in the course of the business in the name of the firm, and they might safely act upon such inference. Such continued responsibility of the firm, including that of the retiring partner, rests upon the ground of the negligence of the partners, in that they left the business community in ignorance of the dissolution of the partnership, and thus left strangers to con-

clude that it continued, and to have faith and confidence in the partnership named. It rests upon the just principle that, if one of two persons must suffer by reason of a credit given, he whose act or negligence misled the confidence of the other, and who has been the cause of such credit by his misrepresentation, his negligence or fraud, ought to suffer, and not the other. It contravenes reason and common justice that a person in no default shall suffer loss by reason of the *laches* and misconduct of another, when one or the other must suffer loss. Gould on Partnership, 248; Collyer on Part., § 530; Story on Part., § 160.

A partner retiring from the partnership, in order to relieve himself from further liabilities incurred of the firm, must bring actual notice of such retirement, and of the dissolution of the partnership, home to such persons as have been accustomed to deal with it. It is not essential that such notice shall be given in any particular form — it may be express or it may be implied from circumstances. It must appear, however, with reasonable certainty, that such persons in some way received actual notice. This is so, because established business relations might lead such parties more readily to give the firm credit. Moreover, they are known to the firm, and may be readily, in some proper way, notified. *Scheiffelin* v. *Stevens*, 1 Winst. (N. C.), 106.

As to persons who had knowledge of the firm before its dissolution, but had not had dealings with it, general public notice, given in any reasonable way, will be sufficient. Evidence of facts and circumstances that, in their nature, connection and bearings, put the public or particular parties claiming or complaining, on notice, may be submitted to the jury, with proper instructions from the Court, to prove the required notice.

Such notice given in a regular newspaper, of general circulation, published in the city, town or county where the partnership business is carried on, is the usual method of

giving information, and may, in ordinary cases, be sufficient, when continued for a reasonable length of time—this depending somewhat upon the nature, extent and place of the business. It is said that the sufficiency of notice thus given might be questioned, in many cases, unless it shall be shown that the person entitled to notice was in the habit of reading the paper. General public notice thus given would not be actual and express notice, but it would be presumptive in its nature, and from it the jury might, under proper instructions from the Court, conclude such persons as had not had previous dealings with the firm. Collyer on Part., §532; Story on Part., §161; *Tinjoy v. Spofford,* 93 U S. R., 430.

It is often difficult to determine what amounts to due and sufficient notice of the retirement of a partner, but the evidence to prove it should be such as would reasonably warrant the jury in finding the fact of notice—that the party to be charged with it actually had it, or might, by reasonable diligence, have learned of the dissolution of partnership and the retirement of the partner sought to be charged, from the means and opportunity supplied or afforded for the purpose of giving notice of the same. Generally, the reasonableness of the notice will be a mixed question of law and fact, to be submitted to the jury, under proper instructions of the Court as to whether, under all the attending circumstances of the particular case, it was sufficient to warrant the inference of actual or constructive knowledge of the dissolution. As said above, ordinarily, notice fairly given in a newspaper, generally circulated abroad, and particularly among the business people of the town or city where the partnership carried on its business, would be sufficient as to all persons who had not had previous dealings with the partnership. It is better and safer to give notice in that way, although it might be given in other ways. This would afford business men reasonable opportunity to learn of the dissolution, and, in the course of business, the matter

would be generally known and more or less spoken of to business men from every direction. But such publication must be fair and reasonable as to its terms and the number of times it shall be made.

If the facts are found or ascertained, the reasonableness and sufficiency of the notice may be a question of law for the Court. The Court must determine that there is, or is not, evidence sufficient to go to the jury to prove notice.

In the present case there was evidence of actual notice to plaintiffs of the retirement of the defendant J. A. Sexton from the partnership in question, but there was evidence to the contrary. Whether there was reasonable and sufficient general public notice of it becomes a material question. We cannot hesitate to decide that there was not sufficient evidence of it to go to the jury. Such notice was published in a daily paper one time, the circulation of which was confined mainly to the city of Raleigh. It does not appear that any one actually saw or read it, whether it appeared in an obscure place in the paper, or what space it occupied. Nothing appeared going to show that the plaintiffs saw the paper, or that they ever heard of the notice in any way. It was shadowy, entirely too slender of itself, to serve any practical or just purpose, especially as the business was continued in the firm name. The Court should, in the proper connection, have told the jury that there was no evidence before them of general notice, and, as he failed to do so, there is error. The plaintiffs are entitled to a new trial, and we so adjudge.

Error.