## WILLIAM C. LYON *v.* ADGRAPHICS, INC., ET AL.
### (5682)

BORDEN, O'CONNELL and STOUGHTON, Js.

---

Argued February 11—decision released April 26, 1988

*Susan M. Cormier,* with whom were *Wesley W. Horton* and *Martin M. Rutchik,* for the appellants (defendants).

*Lloyd L. Langhammer,* with whom, on the brief, was *Andrew Brand,* for the appellee (plaintiff).

BORDEN, J. The defendants[1] appeal from a judgment of specific performance in this contract action. The sole issue is whether the trial court erred in finding that the plaintiff had accepted the defendants' counteroffer prior to the defendants' revocation of that counteroffer and thus created an enforceable contract between the parties. We find error.

The trial court found the following facts. The defendant Edward Sherman had engaged V.R. Brokers as listing agent for the sale of a business with the principal

---

[1] The defendants in this action are Adgraphics, Inc., and Edward Sherman, individually and as executor of the estate of Ellen Sherman. At all times relevant to this action, Edward Sherman acted on behalf of Adgraphics, Inc., in those capacities.

asset being a real estate advertisement publication known as the "Showcase of Homes." The plaintiff contacted V.R. Brokers as a prospective purchaser. On December 5, 1985, the plaintiff made a written offer to purchase the business for $75,000, and attached certain conditions to the offer. Later the same day, Sherman signed a written counteroffer to sell the business for $80,000, and indicated that two of the conditions which the plaintiff attached to his offer were not acceptable.

On December 7, at 11:35 a.m., the plaintiff, purporting to accept the counteroffer, signed it before a notary public, and then brought it to the office of V.R. Brokers around noon on that day. At about 9 a.m. on that same day, Sherman informed the principal of V.R. Brokers, Robert Renault, that he wanted to cancel his counteroffer. This information was communicated to the plaintiff by Renault verbally immediately before the plaintiff handed the signed counteroffer to Renault at noon on December 7.

On the basis of these findings, the court concluded that the counteroffer was not effectively revoked because the revocation was not communicated to the plaintiff before he accepted the counteroffer. The court specifically found that there was a contract enforceable against the defendants when the plaintiff signed the counteroffer before a notary public at 11:35 a.m. on December 7.

"It is a basic principle of contract law that in order to form a binding contract there must be an offer and acceptance based on a mutual understanding by the parties. *Bridgeport Pipe Engineering Co.* v. *DeMatteo Construction Co.,* 159 Conn. 242, 249, 268 A.2d 391 (1970); *Zahornacky* v. *Edward Chevrolet, Inc.,* 37 Conn. Sup. 751, 754, 436 A.2d 47 (1981)." *Cavallo* v. *Lewis,* 1 Conn. App. 519, 520, 473 A.2d 338 (1984). The coun-

teroffer by Sherman created a power of acceptance in the plaintiff. *Cavallo* v. *Lewis,* supra; 1 Restatement (Second), Contracts § 35. That counteroffer, however "was revokable by the defendant at any time before acceptance by the [plaintiff]." *Lloyd & Elliot, Inc.* v. *Parke,* 112 Conn. 504, 507, 152 A. 825 (1931); J. Calamari & J. Perillo, The Law of Contracts (2d Ed.), § 2-20 (d).

The trial court's conclusion that the plaintiff's acceptance of the counteroffer was effective when he signed the counteroffer was contrary to our law. "Revocation of an offer in order to be effectual must be received by the offeree and 'before he has exercised his power of creating a contract by acceptance of the offer.' Restatement, 1 Contracts, § 41 and § 69, Comment a; 1 Page, Contracts, § 134. Acceptance is operative, if transmitted by means which the offeror has authorized, as soon as its transmission begins and it is put out of the offeree's possession . . . irrespective of whether or when it is received by the offeror." (Citations omitted.) *L & E Wertheimer, Inc.* v. *Wehle-Hartford Co.,* 126 Conn. 30, 35, 9 A.2d 279 (1939). See also 1 Restatement (Second), Contracts §§ 56, 63. The plaintiff's act of signing the written counteroffer was not sufficient to constitute an acceptance of the counteroffer. The act of signing the counteroffer in this case failed to communicate the acceptance to Sherman or his agent and failed to put the acceptance out of the plaintiff's possession. It was, therefore, ineffective to create a contract.

When Sherman, through his agent, informed the plaintiff that the counteroffer was withdrawn, the plaintiff's power to accept the counteroffer no longer existed. 1 Restatement (Second), Contracts § 42. This was done before the plaintiff had properly accepted the counteroffer by transmitting the signed counteroffer to

Renault. Accordingly, no enforceable contract between the parties was ever created.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendants.

In this opinion the other judges concurred.